Good morning. Judge Luck and I appreciate having with us this morning, and Friday morning, our colleague from the Southern District of Alabama, Judge Terry Moore. I've known Judge Moore a long time. He's not new to the federal judiciary. He served for many years as a federal magistrate judge on the Middle District of Alabama before being appointed a district judge to the Southern District in my hometown, Mobile, a great place. We have a custom of inviting district judges within our circuit after they've been on the course to sit with us. He gives us an opportunity to show them how we do our work when we review their work, and it gives them an opportunity, too, to tell us maybe their perspective about how things work or don't work with our precedents. It's a helpful custom and tradition, helpful dialogue. We really appreciate him being here this week. When a district judge agrees to do this work, they're adding that work over and above the work that they already have on their docket in the district court. So, that's one of the reasons we only asked Judge Moore to be with us for two days this week, and we really appreciate him being here to help us with our work. Thank you, Chief. We're going to hear two appeals this morning. Counsel, we know about your cases. We're familiar with them, so you don't need to tell us the background. You only have limited time this morning. Feel free to get to the heart of your argument when you come forward to speak with us. Pay attention to the traffic lights, please. When the red light shines, it is time to finish. But if you're answering a question from the court, feel free to finish your answer. You won't lose rebuttal time if that's something that you have. But do be mindful of our time this morning and pay attention to those lights. We've read your briefs. We've read the authorities cited in your briefs. We've looked at at least portions of the record. So, you should feel free in knowing that we're well-prepared this morning. Our first case, Tecnicas Reunidas v. SSK. Mr. Stack, will you come and speak with us, please? May it please the court, Brian Stack on behalf of Tecnicas Reunidas de Talada, or what we will refer to as TRT for ease. To quote Judge Scott Makar, the Florida appellate judge who wrote the opinion in Rambola v. Bacci, switching sides and turning against a former client in the same ongoing case without client consent presents one of the most compelling cases for broad prophylactic judicial action. Side switching creates irreparable harm. It creates an irrefutable presumption that client confidences have been disclosed, particularly when the side-switching lawyer has joined a new firm. And the district court below found that the two lawyers that switched sides, Mr. Conejero and Mr. Lotito, who joined Cuatro Casas, violated those clear-cut ethical principles. And the court found that that violation, that ethical violation, constituted a violation of U.S. public policy, which opposes side switching because it underlines the fair and efficient administration of justice. Where do I find that federal policy? That federal policy is set forth in the model rules, which govern in almost all districts, except to the extent that a district court is bound by state rules. The thing about model rules is they govern absolutely nobody. In other words, the model rules, I could violate them all I'd like, and there could be no recourse to that at all, right? Because there's no body that enforces model rules. They're a model in the sense that, hey, here's an exemplar that you could adopt jurisdictions and states if you'd like to, correct? That is correct, except, Judge, in almost every district. Every state has either adopted a version of the ABA model rules or, like Florida, which has adopted a derivative of those model rules. Except that what does the Panama Convention say whose public policy has to be violated? The U.S. public policy, and the U.S. public policy is embodied in these ethical rules that govern when the seat of the arbitration is in the United States. How is that the case if there are 50 different rules, and they are different? I mean, by the way, some states have not even adopted the model rules. They have the old code, the model code, which is different. Some have model rules but have different intricacies of when, as you point out, when you can waive conflict, when you can't waive conflict. True. Some allow it. Some don't. How could we say that there's a well-defined and established policy that has an inherent core or process or morality or justice? Because all of the rules prohibit side switching. Some allow side switching to occur if there's informed consent. Counsel, all the state rules do. But we're talking about a national federal policy. Where is this well-defined national policy prohibiting this? I apologize for jumping on top of your statement, Your Honor. It's embodied in the cases that construe the ethical codes, both federal and state. Well, I've looked at every single case that both the district court and you cited. And as best as I can tell, every one of them relies on a state rule, applying that state rule from where that comes from. None of them that I've seen, and please point out to me, where they've said there is a federal policy. You have violated a federal national policy prohibiting side switching or conflict of interest. And as a result of that, I am sanctioning you or doing something as a result of that. Well, it's embedded. Am I correct that no case lays it out like that? I'm not so sure, Your Honor. Tell me which one. I couldn't cite to you a case now because, A, it wasn't disputed below. The district court found there to be a national policy that prohibited this kind of misconduct. The cases that construe and address side switching all say it is a forbidden practice by lawyers. It cannot be countenanced because to allow that to occur would so disrupt and taint the integrity of our judicial process that it cannot be permitted. Go ahead. No, go ahead. Well, if that's the case, and let's just give you first base and say that there is just a general policy that lawyers shouldn't do that, why didn't your client immediately bring this to the attention of someone who could do something about it as soon as they found out about it? That's exactly where I was going. And, of course, that's where the district court went. The district court took the position that although the side switching lawyers and the new law firm failed to address the issue of the change of firms, failed to advise TRT of the fact that the lawyers were changing firms, failed to advise them of the consequences of that change, failed to advise them that they had an opportunity to object, failed to advise that they had a mandatory obligation at a minimum to create an efficacy. But your client wasn't without counsel, though, after these two lawyers switched sides, though, correct? They were not without counsel, but the counsel that they were relying on— They were fully aware of all the facts. I understand. But the counsel they were relying on were the very lawyers that went to them after the fact, 10 days after they had already resigned from their law firm and joined the adversary's law firm, and only then did they advise, we have joined the adversary's law firm, but not to worry, not to worry. They induced TRT. They waited how long before they get an arbitration award that's adverse? Well, they waited— After learning all these facts, represented as well by other lawyers, they waited a year, didn't they? And then after you get an award against you, an adverse award, then the objection's raised? Well, as we've laid out in our brief, we do not believe that TRT was fully knowledgeable of all of the facts and circumstances of the side-switching, which would have warranted them to raise any objection at the time. Remember— But what facts did they need to know? Well, they would need to know how long was Conejero negotiating with Cuauhtemoc Casas, the law firm, which by his own affidavits was more than a year. They didn't know that. We learned that information in the case when it was— Knowing that they had switched sides. They did know that he had switched sides, and they discussed— Is all they needed to know to act, isn't it? No. That is what the district judge said. The district judge said, listen, you didn't get any of the disclosures that you were entitled to receive under either the ABA rules or the Florida rules. Notwithstanding, you knew he had moved over. Therefore, your duty to object in the arbitration or to run into a court somewhere crystallized at that very moment. We disagree with that. The problem is if we allow this, then we're just rewarding this kind of sandbagging. We're saying you can just keep this in your back pocket and wait to see how the arbitration goes. If you lose, then you can raise your objection. Well, I appreciate that sentiment because that was the district court's sentiment. Not that she found that there was sandbagging or— But that's what it would allow. No, but it doesn't, Your Honor, for the following reason. The party and the lawyers that engaged in the wrongdoing were Conejera and Lotito and his successor law firm, who ended up erecting an ethical wall unbeknownst to us. We only learn of that in the proceeding below in district court. We don't know any of those circumstances. So we don't know at the time whether or not the changeover of law firms was something that was reasonably executed such that we would or would not have any objection. Does the ICC allow a mechanism to bring this up? No, because there is not—the issue of conflicts is not something that is typically handled by the arbitration panel. But in the context of what we are arguing here, which is a public policy violation, which is the defense under the Panama Convention, the analog to the New York Convention, those public policy defenses can't be raised before the arbitration panel or any other court until the award is issued. And at the award enforcement stage, as this court has held, that's when you bring your public policy argument, and that's when we brought it here. I respectfully suggest that the case that governs the entire waiver argument is the University Commons case where there was dissembling by the arbitrators in their disclosures. There were half-truths, and there were nondisclosures. And the court said, listen, we can't tell if there was a waiver as a matter of law. Did that party, did the losing party who took an appeal from an adverse arbitration ruling, did that party have all the facts and knowingly waive its rights? We can't tell, and the district court should have stuck with its instinct and allowed discovery, which is what we asked the court to do. So if your client had been diligent and timely raised this, would not one of the possible remedies to have been to erect a wall between the lawyers who switched into the firm? And as I hear it, that's what was done. You may not know all of the details of it, but I understand from what you've just argued that that's what was done. Judge, that's not what was done. I think the facts are as follows. Mr. Conejero told TRT's in-house lawyer that he had left and joined Cuauhtecas 10 days before. We all understand the irrefutable presumption that once he joined that firm, all of TRT's litigation confidences, all of its privileged communications, all of its litigation strategies immediately are in the hands of Cuauhtecas. And the law is very clear that the erection of a so-called ethical wall after the fact is completely ineffectual. It does nothing to protect the innocent, the aggrieved party who has been damaged by the side switching. Okay, Mr. Stack, you've been answering Judge Moore's question, but you're over in your time. So let's hear from Mr. Dunn. Thank you, Your Honor. May it please the Court. My name is David Dunn. I'm with Hogan Lovels, and I represent the Appali SSK. I'd like to start right where the Court really ended with Mr. Stack, and that is the question, and I think it's the critical question here, that technicus slept on its rights. As you said, Chief Judge Pryor, it's sandbagged, and I think that's the critical issue, and there's no policy that authorizes that kind of delay in asserting your rights. So, counsel, I want to raise two issues with regard to that. Sure. Your opposing counsel suggests two arguments in response that I can tell. The first argument is that raising this sort of issue is not, there's no avenue to raise this sort of issue in front of the arbitration panel, and as best as I can tell, there's at least some law out there which suggests that disqualification and conflict issues, at least some courts have held, are not appropriately raised in the arbitration panel. The second argument is that there's at least some case law, specifically out of the D.C. Circuit, which suggests, or at least implies, that there cannot be forfeiture, which is what we're talking about here, of public policy arguments. I'd like you to address those two points, please. Yes, Judge Luck. First of all, I'd like to point out that Judge Altanaga addressed them below. She did. They're addressed on page 19 of her order, and she was correct. She addressed specifically the proposition that under Florida law, which is the governing ethical rules and the governing procedure, because Florida was the seat of the arbitration. It's really not, though. I mean, that's part of where I think there's at least some mistake here. This is not a matter of Florida disqualification or ethics law. This is about a public policy defense that is authorized by a federal treaty and about a federal public policy, and the question is whether under the treaty that can be waived and whether there was an avenue to waive it in the ICC. Okay, before we get to that, I will get to that, but before we get to that, in the arbitration, Florida procedural law governed. We're not at the stage of public policy and having an award yet. I'm going to get to it in a second, but there was an opportunity, and Judge Altanaga found specifically that there could have been a motion for disqualification made before the arbitration tribunal. Under Florida law, that was permitted. Further, the ICC rules, and again, Judge Altanaga cites this, specifically provide for the bringing of proceedings in the district court ancillary to the arbitration. If they believe they could not move to disqualify before the arbitrators, they could have moved in the district court right then and there. Counsel, as I understand that, though, that's really limited or it's been limited to injunctive relief. In other words, it doesn't authorize any sort of interlocutory motion brought. It's about do we need injunctive relief as the arbitration is going on because assets are going to be depleted or something like that. They could have gotten an injunction barring Quattro Casas from continuing to act for the respondent. They never even asked that that happen. They never even approached Quattro Casas about that at the time. They could have brought a proceeding. There are proceedings under the ICC rules. Judge Altanaga found properly they could have moved to disqualify, and virtually all the cases that Appellant cites are disqualification cases. The question is, having failed to move for disqualification, having failed to ask, and the only relevant fact, which Judge Altanaga found, and indeed what Mr. Stack argues to you, the only relevant fact is the fact that Canajeros switched sides. And once you know that, this is an irrevocable, unwaverable conflict. Well, they knew that on April 10, 2020, and they did absolutely nothing until June of 2021, 15 months. And there are many cases cited by Judge Altanaga and other cases that we cite that say that that kind of delay, the waiver here is a waiver of the right to assert the objection, not the conflict. And that is the critical point. And that is a question, I think, of federal law. I think you're right, Judge Locke. And Judge Altanaga held that having slept on their rights for 15 months, and this would be terrible public policy, to say that a party that has a right to disqualify opposing counsel because of side-switching is free to wait, and in effect take multiple bites of the apple, to sandbag, to hold the ace up its sleeve, however you want to describe it. That's exactly what Mr. Stack and Technikos are asking this court to authorize, and there is no public policy supporting that.  who is not a lawyer themselves, that their lawyers will do everything within their powers ethically to protect their interests. And when that lawyer then becomes encumbered by a contrary interest, which is the other side in the matter, shouldn't we as a court move to protect them because your client knew who was switching sides and you could have done some things to protect your client, such as erecting a wall and setting that out before the arbitrator and asking the other side specifically if they had any objections to it so that the integrity of those proceedings would be protected? Your Honor, my client is not the perpetrator here. It is my client hired Quattro Casas. It wasn't consulted or knowledgeable. There's no evidence of that about Quattro Casas' hiring of Mr. Conajeros. And I think, as was pointed out by one of you in questioning of Mr. Stack, Technikos had other lawyers. There were plenty of lawyers available. Quattro Casas was never representing Technikos. It was representing SSK. I don't think the Quattro Casas firm had an affirmative duty to its adversary. I know of no ethical rule in that regard. And if there had been a motion to disqualify or even a request to disqualify or a request to set up an ethical wall, then all of these issues could have been dealt with at the time. But instead, what Technikos did was say nothing. The lawyers knew they were switching sides, though. I'm sorry? The lawyers knew they were switching sides, though, correct? Mr. Conajeros and presumably management of the Quattro Casas firm, but I don't know what the lawyers at Quattro Casas knew when about what was going on. There's no evidence in the record of that, Your Honor. I don't know the answer to that question. I also want to make just one point about discovery, because I think discovery is the same red herring and the same sitting on your hands and then coming here that we have in the main issue of waiver. There was no request for discovery below. Nobody said we need to know these facts. Nobody said we need to know about the ethical wall. We need to know what Mr. Conajeros did after he went to Quattro Casas. Mr. Conajeros submitted a lengthy affidavit to the district court below, and there were factual disputes. The principle of Technikos was the client submitted an affidavit. But what Judge Altanaga found, and Judge Altanaga's decision we believe was completely correct, was that the one critical fact that needed to be known was that there had been side switching. I agree with you, Judge Luck, there could have been a question, and we did argue below that there was a question as to whether that implicated federal public policy and whether they had proved a public policy that justified setting aside. And we argued for a narrower construction of the public policy exception than Judge Altanaga found. But I'm not here making the argument that that should have been sustained, although I think that is a basis on which this court could affirm. Mr. Dunn. Yes, sir. Well, let's explore something that Judge Luck raised that I don't think you've yet addressed, and that is whether the public policy defense can be waived. Now, I can only speak for myself about this, but it seems to me that it can be, if for no other reason the convention itself says in Article V, Section 2, the recognition and execution of an arbitral decision may also be refused if the competent authority of the state in which the recognition and execution is requested finds that the recognition or execution of the decision would be contrary to the public policy of that state. It doesn't say must. It doesn't say shall. It says may. Is that right? Your Honor, I was about to make exactly that point, that this is discretionary, and the question of whether to apply the policy and what the policy is and the four corners and scope of the policy are all within the court's discretion. And in effect, what Judge Altanaga said was because you have a delay here, if you look at the overall circumstances here, public policy is not implicated because having had this right, having had side-switching occur, the public policy is not offended or implicated, whereas here the party having that right has slept on its rights, waited to see what the arbitration award was, and only then come in and asserted the public policy. I think that's the critical issue is you have to look at the entire facts and circumstances. And it could be that you can't waive ex ante a public policy defense based on facts that have not yet occurred, right, as would be the case, say, in the D.C. Circuit case. But here where all the material facts, that is the side-switching itself, as Judge Altanaga found, are known to the party that has the defense, sleeping on your rights for more than a year gives rise to a waiver. I think that's right, and I think there are two ways to approach it. You can either say that you look at all the facts and circumstances in deciding whether the district court – and if the district court has discretion, Your Honor, I would suggest to you that the appropriate standard of review is abusive discretion. And I certainly don't think that Judge Altanaga abused her discretion under the facts and circumstances here. And I think you're absolutely right. When all the facts are known, or if all the facts are known, then you have a different situation in terms of the question of waiver. And I don't think you have to reach that issue to decide that Judge Altanaga properly exercised her discretion in deciding on the complete sets of circumstances here and the fact of the delay. And she cited numerous cases that find – and there are cases in this court that find that delay in asserting rights is a problem. And I think it is a problem, and if you're talking about broad public policy, I think that is an important issue. Counsel, your opposing counsel cites the Enron Nigeria case from the D.C. Circuit. And while the facts are different there, the public policy issue is different, and the way it was raised is different, there's some broad language in there that I want to read you and have your reaction to. The court there said, quote, Forfeiture cannot divest the court – that court – of its duty to resolve the public policy question any more than waiver can. As this court held in Noonan, where a party has failed to make a public policy objection to trial, that objection may not be waived by any system of pleading, and the court itself was bound to raise it in the interest of due administration of justice. Even where a party's failure to recognize the public policy issue until appeal to imply the alleged violation is hardly repugnant to fundamental notions of what is decent and just, the court must nevertheless decide the issue. What do we do with that? I think you find that that is overbroad and it doesn't apply in the specific circumstances here. And as I said, I think what you can do is say that you have to take the totality of circumstances into effect in deciding whether the public policy is strong enough and decisive enough so that the question you're really being asked is this. Is there a public policy that says where the party becomes aware of side-switching at an early stage in the proceeding and does nothing and lets the proceeding go forward and mature and then comes along afterwards and says I object and cites the irrefutable presumption. Is there a public policy under those circumstances? And I think it is, as your Honor has indicated, very easy here to say that language is overbroad and doesn't apply in the facts and circumstances. With the short time that we have left, let me ask you a hypothetical. Imagine two drug dealers get together and enter into a written contract which says I'm going to sell my five pounds of heroin to you for $30,000 per pound. And any dispute about that is going to be resolved by the International Chamber of Commerce cited in Miami to be held in Spain. And they go through. One guy rips off the other guy. They invoke arbitration. They have their arbitration in Spain. The arbitrators give an award. And then someone comes to the federal district court in Miami and says please I'd like my $30,000 because I was ripped off of heroin. Here's my arbitration. No one at any point has raised any public policy defense. Are we required to enforce that? Are you asking whether sui sponte? Are we required to enforce that? I don't know, Your Honor. Because it's been forfeited every which way from Sunday. I don't know, Your Honor. There are certainly a variety of cases including cases in this court and in the state of Georgia that say where a contract is void as a matter of public policy that it cannot be enforced and that any judgment that results from that is void. So is it the nature of the public policy that's the issue here? Because it would seem to me that there's no way on God's green earth that any federal district court can enforce that arbitration regardless of whether a party had raised it or not. But you're right that that's very different than this case. In other words, ab initio, from the get-go, that contract is void and against public policy. Here the argument is something, some defect that happened in the course of the proceeding caused it to be defective. What I think Judge Altanaga said was under all of the facts and circumstances there is not a public policy that is strong enough here to overcome the public policy of enforcement of arbitration. See, that's a different issue though. I mean, that's a different issue from the waiver, right? So I thought Judge Altanaga found that there was a waiver and that's taking a peek at the defense itself, isn't it? But I think it's all the facts and circumstances, Judge Pryor. I think she took into account all the facts and circumstances and what she said is in this circumstance where you could have done something, in the hypothetical Judge Luck gave, there's nothing you can do about it. This is a contract for a drug deal. There's nothing anybody can do about that. It's something that's against the public policy on the face of the agreement itself and would be apparent from the face of the arbitration award presumably as well, right? And cannot possibly be ameliorated. It is clear here that if Technikus had moved timely, it could have disqualified Quattro Casas. It could have asked for the erection of a wall. It could have curtailed the situation. And the failure to have acted promptly is a relevant fact here and shows that there was no abuse of discretion in this case and that Judge Altanaga's well-reasoned decision should be affirmed. And I thank you for allowing me to go over to answer your questions. Anything else for the court? No, thank you, Mr. Dunn. Mr. Stack, you've saved five minutes. Thank you, Your Honor. Point one, the court below did not have all the facts. We asked for discovery at the very outset, and the court said you will not get discovery unless I deny the motion to dismiss. The court determined on affidavits, which we had to supply based upon our own information, that we did not know the full circumstances of the side switching. And we still don't know the full circumstances of the side switching. The district court doesn't know, and on de novo review, this court doesn't know. So, A, we didn't have all the facts that would have given us the opportunity to make an informed, knowledgeable decision as to whether or not that change of firms should be permitted and that conflict waived or not. I would remind the court that one of the obligations of a lawyer that switches sides is to say to their client, I'm doing this, and if you don't like it, you can object and you can seek judicial intervention. None of that occurred, and the disclosure of the side switching came ten days too late. No ethical wall could solve it. Yes, this court is being asked fundamentally and ultimately to determine whether or not the conduct of these side switching lawyers and their new law firm representing the prevailing party did that so fundamentally taint the litigation process that this court cannot abide it and say that we should not allow lawyers in a case to engage in this kind of egregious misconduct. The district judge thought it was offensive. Her conclusion was that I believe you sat on your rights, but there are no facts to support that. So what the prevailing party here is saying is ignore all of the misconduct and ignore the fact that the judicial process was tainted and bless the law. Don't you think it's a bit of an utter statement that there are no facts to support that, that you slept on your rights? No facts? You know that there was side switching. You know that there was side switching on the eve of a decision. What could have been the eve of a decision ends up being a year later. But the mere fact of knowledge that the lawyers— Those are facts. That is a fact. I'm not denying that, Your Honor. Okay. It is a fact. So don't take no facts. But in order for a client to decide whether they're going to object, they need to know more than the lawyer went to another firm. They need to know the circumstances of that. And they didn't know at the time that Mr. Conejero had been negotiating for a job for one full year during the pendency of the proceeding. These are facts when they bubble to the surface. The few facts that we were able to discern, most of which Mr. Conejero revealed in the affidavits that he filed below in opposition to his former client, that he was engaging in nefarious conduct, none of which TRT knew about. So really the case does turn on waiver. Did my client knowledgeably waive what it knew was an egregious conflict of interest? And there's no evidence in the record that it did. To the contrary, everything was fine. The lawyers were talking. Oh, I'm going to a new firm. I told you I was going to start my own firm. And they knew what firm it was. Pardon me? They knew what firm it was. Eventually, 10 days after the fact. But, well, with plenty of time to make an objection, they learned reasonably quickly which law firm we're talking about. That is 100% true, Your Honor. But look at the position that SSK has taken on appeal. They say, and Conejero says in his declarations, I didn't engage in an ethical violation. Everything that he did was above board, proper. It was a mundane change of firms. They contend before Your Honors that they did nothing wrong. If they think they did nothing wrong, why was TRT on notice that they had to run into court or make an objection to an arbitral panel? They didn't because they soft-pedaled it completely based upon the fact that the lawyers knew that they were doing something wrong. He had been doing something wrong for an entire year, and he was looking out for his interest. He's making an opening argument in the arbitration when he's negotiating for an offer from his adversary's law firm. That kind of misconduct is not something that any court should abide, and I respectfully suggest it violates U.S. public policy. We cannot, whether it's in our judicial system or in an arbitration system over which this court has ultimate oversight, we cannot abide that kind of improper conduct and say it's okay. It's okay. You could have said something. What we could have said was we object, and there would have been a mistrial, which is essentially what we are asking for here. The award can't stand. Try it again and do it the correct way. Okay. Thank you, Mr. Stack. Thank you very much for your time. We understand your case, and we'll move to the next one.